**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| DESHAWN DRUMGO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-127-GMS |
| | ) | |
| DAVID PIERCE, Warden, and | ) | |
| ATTORNEY GENERAL OF | ) | |
| THE STATE OF DELAWARE, | ) | |
| | ) | |
| Respondents.[1] | ) | |

DeShawn Drumgo. *Pro se* petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

_____, 2014
Wilmington, Delaware

---

[1]Warden David Pierce replaced former warden Perry Phelps, an original party to this case. *See* Fed. R. Civ. P. 25(d).

Sleet, District Judge

Pending before the court is a petition and an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (hereinafter referred to as "petition") filed by petitioner DeShawn Drumgo ("Drumgo"). (D.I. 1; D.I. 18) The State has filed an answer in opposition. (D.I. 26) For the reasons discussed, the court will deny the petition.

## I. BACKGROUND

On June 15, 2006, Drumgo fatally stabbed Larry Larkin in the courtyard of an apartment complex in Wilmington, Delaware. *See Drumgo v. State*, 976 A.2d 121, 122 (Del. 2009). Darlene Miller, one of several witnesses to the attack, heard screaming and exited her car to see what was happening. When she saw Drumgo lunge at Larkin, she returned to her car because she did not want to watch a fight. Larkin then walked to Miller's car and asked her to take him to the hospital. Larkin was holding his T-shirt against his chest, and told Miller that "he stabbed me." *Id.* Larkin died at the hospital approximately one hour later. *Id.*

Drumgo was subsequently arrested and charged, by indictment, with first degree murder, possession of a deadly weapon during the commission of a felony, carrying a concealed deadly weapon, and possession of a deadly weapon by a person prohibited. *See Drumgo*, 976 A.2d at 122. During the trial that took place in mid-October 2007, several eyewitnesses testified that they saw Drumgo fighting with Larkin. Two of these witnesses were apartment maintenance men who were in the courtyard trying to break up a fight involving several young ladies. One maintenance man testified that he saw Drumgo punching Larkin while holding a metal object and yelling "west side," and the other maintenance man testified that he saw Larkin bleeding as Drumgo placed an object in his back pocket. (D.I. 28, State's Ans. Br. in *Drumgo v. State*, No.550,2011, at 3) Another eyewitness was the sister of one of the young ladies involved in the

fight mentioned by the maintenance men. This woman knew Larkin and Drumgo, and she testified that she saw Drumgo approach Larkin and punch him in the face. *Id.* She described how, as Larkin stood stunned, Drumgo reached down into his pants, pulled out a knife, and stabbed him. *Id.* at 3-4. Other individuals who were in the courtyard provided taped police statements which were played for the jury. *Id.* at 5.

Drumgo testified on his own behalf at trial. He described how he was in the courtyard at the time of the stabbing, and heard someone yell "fight." *See Drumgo*, 976 A.2d at 122. Drumgo stated that he saw Larkin fighting with a big guy wearing black clothing, and he came to Larkin's aid. *Id.* However, he left when he saw that the assailant had something silver, which he assumed was a knife. Drumgo testified that he did not know Larkin had been hurt, and that he believed the State's witnesses identified him as the assailant because they were protecting someone. *Id.*

A Delaware Superior Court jury convicted Drumgo of second degree murder (as a lesser-included offense of first degree murder) and the three related weapons offenses. *See Drumgo*, 976 A.2d at 123. The Delaware Supreme Court affirmed Drumgo's convictions and sentence on July 1, 2009. *Id.* at 124.

On June 9, 2010, Drumgo filed in the Delaware Superior Court a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), and then subsequently filed an amended Rule 61 motion. (D.I. 28, State's App. to Ans. Br. in *Drumgo v. State*, No. 550,2011, Del. Super. Ct. Crim. Dkt., Entry Nos. 66, 83) A Superior Court Commissioner issued a Report and Recommendation that the Superior Court deny the Rule 61 motion. The Superior Court adopted the Report and Recommendation and dismissed the Rule 61

motion on September 26, 2011. (D.I. 26 at 20-30) The Delaware Supreme Court affirmed that decision. *See Drumgo v. State*, 44 A.3d 922 (Table), 2012 WL 1377596 (Del. Apr. 17, 2012).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

3

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell*, 543 U.S. at 451 n.3; *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-

4

51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C.

---

[1] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn,* 570 F.3d 105, 115 (3d Cir. 2009).

§ 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 784-85 (2011). As recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

Drumgo's timely filed habeas petition asserts eleven grounds for relief:[2] (1) the trial court erred by not dismissing two jurors who had allegedly engaged in misconduct; (2) defense counsel was ineffective for not objecting to the trial court's insufficient inquiry into alleged juror

---

[2]The court has renumbered Drumgo's claims without changing their substance.

misconduct; (3) prosecutorial misconduct during the State's closing argument deprived him of a fair trial; (4) the trial court improperly prevented one of his witnesses from testifying at trial; (5) the trial court erred by allowing the State to offer evidence of his prior felony convictions and an allegedly "falsified" weapons conviction; (6) defense counsel was ineffective for not objecting to the admission of the prior convictions; (7) the trial court improperly limited defense counsel's cross-examination of a police witness; (8) defense counsel was ineffective for failing to seek DNA testing of Drumgo's clothing and failing to compel the State to produce DNA test results; (9) defense counsel was ineffective for failing to seek sanctions against the State for not producing the DNA evidence Drumgo believes was in its possession and also for not seeking sanctions against the State for not preserving potentially exculpatory evidence; (10) Drumgo was deprived of a fair trial when the State used evidence in closing that had allegedly not been properly admitted; and (11) the cumulative effect of all of the aforementioned errors warrants habeas relief and the Delaware Supreme Court erred by not considering Drumgo's argument that he was entitled to post-conviction relief on the basis of "cumulative error." For the following reasons, the court concludes that none of Drumgo's claims warrant relief.

## A. Procedurally Barred Claims: Claims One, Two, Three, Five, Seven, Nine, Ten

### 1. Claims one, two, and three

In claim one, Drumgo argues that his Sixth Amendment right to a fair trial was violated when two jurors had improper contact with a witness for the State during his trial. The Delaware Supreme Court described the facts underlying this claim as follows:

> [Darlene] Miller testified in the afternoon, on the second day of trial. During the lunch recess, Juror No. 9 saw and overheard Juror No.1 talking to Miller. Juror No. 1 immediately reported the contact to a bailiff, and the trial court interviewed both jurors before the trial resumed. Juror No. 1 explained that she knew Miller because Miller has been a customer at the stores where Juror No. 1 worked. Miller asked Juror No. 1

whether the juror knew Drumgo, and then told Juror No. 1 that she was going to testify in a murder case involving her son's best friend, Larkin. After hearing both jurors' accounts of the contact, the trial court determined that they could remain on the jury, and Drumgo did not object.

*Drumgo*, 976 A.2d at 122. In claim three, Drumgo contends that he was denied a fair trial because the State referred to "Drumgo's testimony as ridiculous, cute, and a sales pitch" during its closing argument. *Drumgo*, 976 A.2d at 124. Although Drumgo presented both of these claims to the Delaware Supreme Court during his direct appeal, the Delaware Supreme Court only reviewed the claims for plain error under Delaware Supreme Court Rule 8 because Drumgo did not object to the juror misconduct or the prosecutorial misconduct during his trial. *See Drumgo*, 976 A.2d at 123. By explicitly applying the plain error doctrine to these issues on direct appeal, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed* that its decision rested on state law grounds. In turn, the plain error doctrine of Delaware Supreme Court Rule 8 constitutes an independent and adequate state procedural rule for procedural default purposes. *See Campbell*, 515 F.3d at 177-82. As such, the court concludes that claims one and three are procedurally defaulted,[3] which precludes the court's review of the claims on their merits absent a showing of cause and prejudice.

Drumgo does not assert, and the court cannot discern, any cause for his default of claim three. However, the court liberally construes Drumgo's contention in claim two regarding defense counsel's failure to object to the trial court's allegedly inadequate questioning of Jurors No. 1 and No. 9 as an attempt to establish cause for his default of claim one. This attempt is unavailing. An attorney's failure to preserve or raise a claim on direct appeal can constitute

---

[3]Moreover, Drumgo cannot present these claims in a new Rule 61 motion, because a Rule 61 motion would be time-barred under Rule 61(i)(1) and barred as formerly adjudicated under Rule 61(i)(4). *See White v. Carroll*, 416 F. Supp. 2d 270, 281 (D. Del. 2006).

cause for a petitioner's procedural default only if counsel's failure amounts to constitutionally ineffective assistance of counsel. *See Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009). Here, because Drumgo never presented the instant ineffective assistance argument to the Delaware Supreme Court on post-conviction appeal, claim two is itself procedurally defaulted and cannot excuse Drumgo's procedural default of claim one (improper juror conduct claim). *See Edwards*, 429 U.S. at 453-54. The court also notes that Drumgo does not provide any cause for his procedural default of the ineffective assistance of counsel allegation set forth in claim two.

In the absence of cause, the court will not address the issue of prejudice for claims one, two, and three. Moreover, given Drumgo's failure to provide new reliable evidence of his actual innocence, the miscarriage of justice exception to the procedural default doctrine is inapplicable. Accordingly, the court will deny claims one, two, and three as procedurally barred from federal habeas review.

### 2. Claim five

In claim five, Drumgo contends that he was denied due process because the trial court failed to conduct the balancing test required under Delaware Rule of Evidence 609(a) before permitting the State to use two prior convictions and a "falsified" weapons conviction to impeach his credibility. The Delaware Supreme Court rejected this claim on post-conviction appeal as barred by Delaware Superior Court Criminal Rule 61(i)(3), because Drumgo failed to raise the argument during trial or on direct appeal. By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed* that its decision rested on state law grounds. This court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F.

Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the court cannot review the merits of claim five absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Drumgo attempts to establish cause for his default by alleging ineffective assistance of counsel. As explained later in this opinion, the court concludes that counsel's failure to object to the State's use of his prior convictions during while cross-examining him did not amount constitutionally ineffective assistance. *See infra* at 13-18. As such, counsel's performance with respect to this evidentiary issue does not constitute cause for Drumgo's default of claim five.

The absence of cause obviates the need to address the issue of prejudice. In turn, given the absence of new reliable evidence of his actual innocence, Drumgo's default cannot be excused under the miscarriage of justice exception. Accordingly, the court will deny claim five as procedurally barred.

### 3. Claims seven and ten

In claim seven, Drumgo contends that the trial court erred by improperly limiting his cross-examination of a police witness about inconsistencies between the officer's trial testimony and his preliminary hearing testimony. Drumgo presented this claim to the Superior Court in his Rule 61 motion, but he did not present it to the Delaware Supreme Court on post-conviction appeal. In its post-conviction appellate decision, the Delaware Supreme Court explicitly held that the claims which were not presented on appeal were "waived and abandoned." *See Drumgo*, 2012 WL 1377596, at ¶ 8, n.4. This court has previously held that Delaware's "waiver rule"[4]

---

[4]At least since 1958, the Delaware Supreme Court has consistently applied the rule that a failure to present a claim in the opening brief constitutes a waiver of that issue on appeal. *See Stilwell v.*

constitutes an independent and adequate state procedural rule for the purposes of procedural default. *See Cannon v. Phelps*, 2013 WL 3199837, at *11 (D. Del. June 21, 2013)(holding that Delaware Supreme Court Rule 14(b)(vi)(A)(3) constitutes an independent and adequate state procedural rule for procedural default purposes); *Doctor v. Walters*, 96 F.3d 675, 684 (3d Cir. 1996)(a state rule of procedure is "adequate" if it is firmly established and applied with some consistency/regularly followed); *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)(a state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question). Thus, the court concludes that claim seven is procedurally defaulted.

In claim ten, Drumgo alleges that the State improperly "exposed the jury to extraneous evidence (knife) that was not properly admitted evidence." (D.I. 18 at 6) The record reveals that Drumgo never presented this argument to the Delaware Supreme Court on direct or post-conviction appeal. At this juncture, any attempt to present claim ten in a new Rule 61 motion would be time-barred under Delaware Supreme Court Rule 61(i)(1), barred as repetitive under Rule 61(i)(2), and procedurally defaulted under Rule 61(i)(3). *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); *Bright v. Snyder*, 218 F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) bars the Superior Court from considering claims that were not raised in the proceedings leading to his conviction). As such, the court must treat the claim as exhausted but procedurally defaulted.

Drumgo does not allege, and the court cannot discern, any cause for his failure to present claims seven and ten to the Delaware Supreme Court. Once again, given the absence of cause,

---

*Parsons*, 145 A.2d 397 (Del. 1958); *Murphy v. State*, 632 A.2d 1150, 1152 (Del. 1993); *Lum v. State*, __ A.3d __, 2014 WL 4667089, at *1 (Del. Sept. 19, 2014); Del. Supr. Ct. R. 14(b)(vi)(A)(3)(providing that appellant must state the merits of an argument in the opening brief or the argument will be waived).

the court will not address the issue of prejudice. Additionally, the court cannot excuse Drumgo's default of these two claims under the miscarriage of justice exception because he has not provided new reliable evidence of his actual innocence. For all of these reasons, the court will deny claims seven and ten as procedurally barred.

### 4. Claim nine

In claim nine, Drumgo contends that defense counsel was ineffective for failing to seek sanctions against the State for not producing the results of the DNA testing he believes was performed, and also for not seeking sanctions against the State for not preserving unidentified potentially exculpatory evidence. This claim is procedurally defaulted because Drumgo did not present it to the Delaware Supreme Court on post-conviction appeal,[5] and any attempt to assert the argument in a new Rule 61 motion would be barred under Delaware Superior Court Criminal Rule 61(i)(1) as time-barred and under Rule 61(i)(2) as repetive. Drumgo does not allege any cause for, or prejudice resulting from, his default of this claim, and the miscarriage of justice exception is inapplicable. Accordingly, the court will deny claim nine as procedurally barred.

### B. Claim Four: Trial Court Improperly Prevented Witness Testimony

In claim four, Drumgo asserts that the trial court improperly prevented him from calling a forensic nurse to testify on his behalf about the nature of Larkin's injury. Drumgo raised this argument on direct appeal and contended that the nurse's testimony would have been relevant to establish the intent of the person who stabbed Larkin. *See Drumgo*, 976 A.2d at 123. The Delaware Supreme Court rejected the argument in claim four as factually baseless because Drumgo had actually provided a different reason for calling the nurse to testify during the trial,

---

[5]In Delaware, ineffective assistance of counsel claims are not considered on direct appeal. Rather, they must be presented to the Delaware Superior Court in a Rule 61 motion for post-conviction relief. *See Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).

namely, that she would testify "about the medical care Larkin received and the likelihood that he would have survived if he had received better, or more prompt, care." *Id.* After concluding that the "trial court correctly ruled that the forensic nurse was not qualified to opine on Larkin's cause of death," the Delaware Supreme Court held that the "trial court left open the possibility that Drumgo could call the nurse to testify about the nature of Larkin's wounds." *Id.* In other words, the Delaware Supreme Court concluded that the trial court did not preclude Drumgo from presenting a witness to testify about the nature of Larkin's wounds, because Drumgo had actually requested to call the witness on a different basis at trial. *Id.*

On habeas review, absent any clear and convincing evidence to the contrary, the court must accept as correct the Delaware Supreme Court's factual finding that the trial court never precluded Drumgo from calling the forensic nurse to testify about the nature of Larkin's wounds. *See* 28 U.S.C. § 2254(e)(1). Here, Drumgo merely re-asserts the same argument he presented to the Delaware Supreme Court on direct appeal, with an additional contention that the trial court's ruling violated Federal Rule of Evidence 702. These allegations fail to rebut the presumption of correctness that has attached to the Delaware Supreme Court's factual finding that Drumgo was not precluded from calling the forensic nurse to testify about the nature of Larkin's wounds. Accordingly, the court will deny claim four as meritless.

### C. Claims Six and Eight: Ineffective Assistance of Counsel

In claim six, Drumgo contends that defense counsel should have objected to when the trial court permitted the State to cross-examine him about his prior felony convictions without conducting the balancing test required under Delaware Rule of Evidence 609(a). Relatedly, Drumgo alleges that counsel should have objected when the State improperly "inflated" (or "falsified") his prior gun conviction into two prior gun convictions. (D.I. 28, State's Ans. Br. in

13

*Drumgo v. State*, No. 550, 2011, at Comm. Rep. & Rec. p. 16; D.I. 28, State's Ans. Br. in *Drumgo v. State*, No. 550, 2011, at Del. Super. Ct. Order pp. 9-10) In claim eight, Drumgo argues that counsel should have tested his clothes for DNA evidence and counsel should have "compelled" the State to turn over DNA evidence Drumgo believes was in its possession. The Delaware Supreme Court denied claims six and eight as meritless on post-conviction appeal. Therefore, Drumgo will only be entitled to relief on these claims if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law.

The clearly established law governing the instant ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

14

In this case, the Delaware Supreme Court applied the *Strickland* standard when it denied the instant two ineffective assistance of counsel claims on post-conviction appeal. Thus, the Delaware Supreme Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry under § 2254(d)(1) is not over, because it must also determine if the Delaware Supreme Court's denial of claims six and eight as meritless involved a reasonable application of *Strickland.* When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens. *See Harrington*, 131 S.Ct. at 788. In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* The court will review Drumgo's claims *in seriatim.*

### 1. Claim six

During a side-bar conference, the State asked the trial court to determine if Drumgo's prior felony convictions were admissible to impeach his credibility. (D.I. 28, App. to Appellant's Op. Br. in *Drumgo v. State*, No. 39, 2008 at A-154 to A-155) Defense counsel argued that Drumgo's prior convictions were off-limits pursuant to the pre-trial stipulation regarding Drumgo's status as a person prohibited. The trial judge disagreed, explaining that Drumgo's prior convictions were admissible for impeachment purposes because Drumgo elected to take the witness stand and the stipulation dealt only with the person prohibited charge. *Id.*

The trial court advised that it would give the jury a cautionary instruction as to what the jurors could and could not infer from such evidence. *Id.* at A-155.

The State proceeded to cross-examine Drumgo. Once the State mentioned Drumgo's prior conviction for carrying a gun during, the trial court specifically instructed the jury that Drumgo's prior crimes were only relevant for the purpose of evaluating his credibility:

> Ladies and gentlemen, you've heard evidence of a prior conviction on the part of Mr. Drumgo. One thing you may not do is to assume that he's guilty of this offense because he was guilty of a prior, previous crime. The previous conviction is to be used by you for two reasons. One, in judging his credibility, his truthfulness of what he's testifying to; and, secondly, it is to be used in fitting it in with the story you've heard about these events.

(D.I. 28, App. to Appellant's Op. Br. in *Drumgo v. State*, No. 39, 2008 at A-158)

In his Rule 61 motion, Drumgo contended that counsel should have objected when the trial court permitted the State to impeach his credibility with his prior convictions without first conducting the balancing test required under D.R.E. 609(a). The Superior Court rejected this argument after determining that Drumgo failed to show that he suffered any prejudice resulting from defense counsel's alleged error, because: (1) the trial court cautioned the jury by giving a limiting instruction as to what the jurors could and could not infer from evidence of a prior conviction; (2) the case was not close; and (3) during its cross-examination, the State presented a copy of Drumgo's record showing a weapons conviction in 2003 and 2004. (D.I. 28, State's Ans. Br. in *Drumgo v. State*, No. 550, 2011, at Del. Super. Ct. Order pp. 9-10). Given these circumstances, the Superior Court concluded that Drumgo failed to demonstrate a reasonable probability that he would have been found not guilty if counsel had objected to the questions regarding the prior convictions or if the jury had heard that he had previously committed only one felony instead of two. *Id.* The Delaware Supreme Court affirmed the Superior Court's

decision on post-conviction appeal, explaining that it could not "conclude that the trial judge's failure to conduct to Rule 609(a) balancing test or that Drumgo's counsel's oversight of that error was prejudicial when first, the jury was already aware that Drumgo was a person prohibited from possessing a deadly weapon, and second, the trial judge gave an appropriate limiting instruction. *See Drumgo*, 2012 WL 1377596, at *2.

After reviewing the Delaware Supreme Court's decision through the doubly deferential lens applicable on habeas review, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying claim six. Once he elected to testify on his own behalf, Drumgo opened himself up to impeachment just like any other witness under Delaware Rule of Evidence 609. Although a prior conviction is admissible to attack the credibility of a witness under D.R.E. 609(a)(1) "only if" it is a felony "and" the court performs the requisite D.R.E. 403 balancing test,[6] Drumgo has failed to demonstrate that suffered prejudice as a result of counsel's failure to object to how the trial court determined the admissibility of his prior convictions. Significantly, jurors are presumed to follow instructions,[7] and Drumgo offers nothing in this proceeding to indicate that the jury did not follow the trial court's limiting instruction. In turn, as explained by the Delaware Supreme Court on direct appeal,

> [t]his was not a close case. There were numerous witnesses, many of whom knew Drumgo and Larkin. Moreover, Drumgo admitted that he intervened in the fight that resulted in Larkin's death, thus placing himself at the scene of the crime.

---

[6]*See Hahn v. State*, 2004 WL 1172898, at *1 (Del. Super. Ct. May 20, 2004).

[7]*See Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *Spencer v. Texas*, 385 U.S. 554 (1967)(evidence of the defendant's prior criminal convictions could be introduced for the purpose of sentence enhancement, so long as the jury was instructed it could not be used for purposes of determining guilt).

*Drumgo*, 976 A.2d at 124. And finally, the jury already knew Drumgo was a person prohibited before the State cross-examined Drumgo and mentioned his prior convictions. Given these circumstances, Drumgo cannot establish a reasonable probability that the result of his trial would have been different if counsel had objected to the trial court's failure to conduct D.R.E. 609(a)'s balancing test or if the jury had heard that he had previously committed only one felony instead of two. Accordingly, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying claim six.[8]

### 2. Claim eight

In claim eight, Drumgo argues that counsel erred by not attempting to have his clothing tested for DNA evidence or by "compelling" the State to turn over DNA evidence Drumgo believes was in its possession. The Delaware Supreme Court rejected this claim as meritless after determining that defense counsel's decision to forego DNA testing constituted a strategic decision and because the value of any DNA testing would have been limited. *See Drumgo*, 2012 WL 1377596, at *2.

The court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying claim eight. First, because nothing in the record indicates that the State ever sought DNA testing of Drumgo's clothing, counsel cannot be considered ineffective for not seeking to

---

[8]The court acknowledges that claim six could be liberally construed as also alleging that appellate counsel was ineffective for failing to raise the D.R.E. 609(a) balancing issue on direct appeal. Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal are strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000). Thus, to the extent claim six does assert that appellate counsel was ineffective for failing to raise the D.R.E. 609(a) issue, the court concludes that appellate counsel's error does not warrant habeas relief for the same reason that trial counsel's error does not.

compel the State to turn over non-existent test results. Second, in his Rule 61 affidavit, defense counsel explains that he decided to forego testing the clothes for Larkin's DNA because the results of a DNA test could have provided strong direct evidence of Drumgo's guilt. In contrast, however, the absence of Larkin's DNA on Drumgo's clothing would not have established Drumgo's innocence. As explained by defense counsel,

> the way the stabbing was done, there is little likelihood blood wood have been transferred to the assailant. The assailant stood behind the victim who was sitting on the ground and lunged over his shoulder with a knife, stabbing him just above the heart.

(D.I. 28, Affid. in Response to Rule 61 Motion by Christopher Tease, Esq., at ¶1, in *State v. Drumgo*, ID #0606012315) Moreover, the fact that Drumgo's clothes were not seized until a week after the stabbing increases the likelihood that Larkin's DNA would not have been found on Drumgo's clothing because, presumably, Drumgo would have washed his clothes during that one-week period. And finally, counsel wanted to preserve the ability to argue that the State failed to meet its burden of proof by failing to offer any DNA testing results. Viewing these factors together in context with the record, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in finding that defense counsel's decision not to test the clothing constituted a professionally reasonable defense strategy.

In turn, Drumgo cannot establish any prejudice from counsel's failure to test his clothes for Larkin's DNA. Three eyewitnesses testified at trial that they saw Drumgo at the scene of the stabbing and that they saw Drumgo stab Larkin. (D.I. 28, Affid. in Response to Rule 61 Motion by Christopher Tease, Esq., at ¶1, in *State v. Drumgo*, ID #0606012315; D.I. 28, State's Ans. Br. in *Drumgo v. State*, No.550,2011, at 3-4) There were additional eyewitnesses who were reluctant to testify but whose taped statements to police were played to the jury. (D.I. 28, State's Ans. Br. in *Drumgo v. State*, No.550,2011, at 3) Given the strength of this testimony, Drumgo

19

cannot establish a reasonable probability that the absence of Larkin's DNA on his clothing would have altered the outcome of the trial. Accordingly, the court will deny claim eight.

### D. Claim Eleven: Cumulative Error

In his final claim, Drumgo contends that the cumulative effect of all of the aforementioned errors warrants habeas relief. He also appears to contend that the Delaware Supreme Court erred by not analyzing his claims "under the leading Supreme Court authority on cumulative effect of all the errors combined' test." (D.I. 18 at 15) As already explained, the court has concluded that claims one, two, three, five, seven, nine and ten are procedurally barred from federal habeas review, and that claims four, six, and eight lack merit. Therefore, the court will summarily deny claim eleven as meritless

### E. Pending Motions

In June 2014, Drumgo filed a motion for injunctive relief and/or a temporary restraining order and/or a transfer. (D.I. 40) The motion asks for the return of his legal materials and that he be transferred to a different correctional facility. Notably, Drumgo filed the identical motion in at least two of his other cases pending in this court, which the court denied because Drumgo failed to satisfy the standard for injunctive relief. *See Drumgo v. C/O Roop*, Civ. Act. No. 12-068-GMS, Mem. Order (D. Del. July 15, 2014); *Drumgo v. Radcliff*, Civ. Act. No. 12-1204-GMS, Mem. Order (D. Del. July 15, 2014). Accordingly, the court will deny Drumgo's instant motion for the reasons set forth in the aforementioned memorandum orders.

In July 2014, Drumgo filed a motion requesting an evidentiary hearing. (D.I. 41) As previously discussed, the court has concluded that the claims alleged in the instant petition are either procedurally barred from review or are meritless. Accordingly, the court will deny Drumgo's request for an evidentiary hearing as moot.

Finally, in October 2014, Drumgo filed a "motion for discovery and all things discoverable in regards to this case." (D.I. 42) Having concluded that Drumgo's habeas petition does not warrant relief, the court will deny the instant motion as moot.

## IV.    CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Drumgo's petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons stated, Drumgo's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.